UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62734-GAYLES

**MARK EDELSBERG,** *individually and on behalf of all others similarly situated*,

      Plaintiff(s),

v.

**VROOM, INC.,**

      Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Vroom, Inc.'s ("Vroom") Motion for Summary Judgment (the "Motion") [ECF No. 76]. The Court has carefully considered the parties' briefs, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion shall be granted.

**I.   BACKGROUND**

Plaintiff Mark Edelsberg ("Plaintiff" or "Edelsberg") brings this putative class action against Vroom for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Edelsberg alleges that Vroom violated the TCPA by using an Automatic Telephone Dialing System ("ATDS") to send him an automated telemarketing text message. Vroom argues that its actions did not violate the TCPA because its text message was sent in direct response to an online classified advertisement posted by Edelsberg and, therefore, the text message did not constitute telemarketing. Vroom further argues that Edelsberg expressly consented to receiving the text message in question by including his cell phone number in the advertisement and directing interested buyers to contact him at that number for more information.

### A. *Vroom's Business Model and "Sell Your Car" Platform*

Vroom is an online car retailer that buys, sells, and finances used vehicles over the Internet. [ECF No. 77, ¶ 1]. As a seller of used vehicles, Vroom necessarily needs to acquire used vehicles in order to maintain its inventory. [*Id.*] ¶ 2. Similarly, like any other used car retailer, Vroom has an interest in customers purchasing used vehicles from its inventory. [ECF No. 92, ¶¶ 1-2]. In order to source its inventory with vehicles purchased directly from individuals, Vroom launched an online appraisal tool (www.vroom.com/sell), referred to as the "Sell Your Car" or "SYC" platform, which allowed a used car owner to receive a cash offer for his or her vehicle after filling out Vroom's online appraisal form. [ECF No. 77, ¶¶ 4-6]. One of the ways Vroom identified individual sellers of used vehicles was through online classified advertisements on websites such as Craigslist (www.craigslist.com). [*Id.*] ¶ 8. Once Vroom identified a vehicle that appeared to meet its purchasing criteria, Vroom would send a text message to the seller expressing its interest in purchasing the advertised vehicle. [*Id.*] ¶ 9.

The text message sent by Vroom would include a unique and individualized link to its online appraisal form that was tied to the particular advertisement for which the text message was sent in response. [*Id.*] ¶ 10. Once an individual submitted the appraisal form, Vroom would review the provided information and then provide the text recipient with a cash offer voucher for the purchase of his or her vehicle. [*Id.*] ¶ 11. While an individual who accepted an offer could decide to structure the transaction as a trade-in and obtain a replacement vehicle from Vroom's inventory, Vroom's purchase of the seller's vehicle was not contingent on the seller obtaining a vehicle from Vroom. [*Id.*] ¶ 12; *see also* [ECF No. 90, ¶ 12].[1]

---

1 Edelsberg does not provide a record citation to support his statement that it is "[d]isputed that Vroom's sell your car program was not contingent on trading or buying another vehicle form Vroom." *See* S.D. Fla. L.R. 56.1(a)(2).

### B. *Plaintiff Advertises a Toyota Prius for Sale on Craigslist*

On or around July 12, 2016, Edelsberg posted a classified advertisement on Craigslist in an attempt to sell his mother's 2010 Toyota Prius. *See* Edelsberg Dep. Tr. [ECF No. 77-5] at 17:15-18, 18:18-25. Edelsberg's advertisement read as follows:

> Toyota Prius 2010 - $9750 (Miami)
> 2010 Silver Toyota Prius 71,000 miles. One owner, well kept, good clean car.
> Call XXX-XXX-6445[2] for more info
> do NOT contact me with unsolicited services or offers

*See* [ECF No. 77-6]. Edelsberg understood that his advertisement could be viewed by anyone who visited Craigslist. *See* Edelsberg Dep. Tr. [ECF No. 77-5] at 28:4-10. Edelsberg was not concerned about including his cell phone number on the posting and understood that anyone with an Internet connection would be able to see his ad and phone number. [*Id.*] at 29:2-6, 26:5-7. In fact, Edelsberg included his number in the ad specifically so "people could contact [him] to purchase the car" or for "more info." [*Id.*] at 26:1, 95:1-17, 123:15-124:11.

Edelsberg's advertisement did not state that he did not want to be contacted by dealers or distant buyers. [*Id.*] at 62-63:18-17, 64:3-13, 127:1-24, 157:11-23, 201:6-9. Edelsberg was not opposed to selling his car to a business and admits that he would have had no problem selling his car to Vroom if they offered top dollar. [*Id.*] at 63:14-17, 65:1-4.

### C. *Vroom Sends Plaintiff a Text Message in Response to Plaintiff's Advertisement*

On or around July 14, 2016, Vroom sent Edelsberg a single text message in response to Edelsberg's online advertisement. [ECF No. 77, ¶ 30]. Vroom had purchased Toyota Priuses from individual sellers in the past and was interested in purchasing Edelsberg's Toyota Prius.

---

2  Edelsberg's full cell phone number was included in the posting but has been redacted here for privacy reasons.

3

[*Id.*] at ¶¶ 28-29. Vroom's text message was sent to the cell phone number listed in Edelsberg's advertisement. [*Id.*] ¶ 31. The entirety of the text message that Vroom sent Edelsberg stated:

> Hi Mark, I am Scott at Vroom. I saw you listed your Prius online & can make an offer but need you to fill out a few more details (takes 4 min) http://go.vroom.com/syc/6C9179. Text STOP to Quit

[*Id.*] ¶ 33; *see also* [ECF No. 77-7]. Vroom texted Edelsberg to express its interest in purchasing his advertised Prius and to obtain the additional information needed for Vroom to appraise the vehicle and provide Edelsberg with a cash offer. [*Id.*] ¶ 32. Had Edelsberg clicked on the link in the message, he would have been led to a Vroom webpage containing its vehicle appraisal form, prepopulated with information from Edelsberg's Craigslist ad, for Edelsberg to input additional information regarding his vehicle. [*Id.*] ¶ 34. In addition to the vehicle appraisal form, the webpage contained links to other parts of Vroom's website including its own used car inventory. *See* [ECF No 90, ¶ 15]. Had Edelsberg completed the vehicle appraisal form, Vroom would have sent him a cash offer voucher for the purchase of his vehicle. [*Id.*] at ¶ 18. The cash offer voucher would have included information regarding Vroom's inventory and the potential tax benefits for a consumer who traded-in their vehicle and purchased a used vehicle from Vroom in the same transaction. [*Id.*]. However, Edelsberg did not click on the link in the text message, view or complete the vehicle appraisal form, or otherwise engage with the "Sell Your Car" platform in any other way. *See* Edelsberg Dep. Tr. [ECF No. 77-5] at 54:14-20. Aside from the initial text message at issue, Vroom did not send Edelsberg any other text messages. [ECF No. 77, ¶ 37].

## II.  LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), is appropriate only if the movant shows that there is "no genuine issue as to any material fact and that the moving

4

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations and internal quotation marks omitted). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

### III.   ANALYSIS

#### A.  The TCPA's Legal Framework

The TCPA prohibits the use of an ATDS to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). In

addition, the TCPA's regulations prohibit the use of an ATDS to make a call that constitutes telemarketing without obtaining the "prior express written consent" of the called party. *See* 47 C.F.R. § 64.1200(a)(2). A text message sent to a cellular phone "qualifies as a 'call'" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016). An affirmative defense to a TCPA claim exists where calls are made with the prior express consent of the called party. *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1224 (S.D. Fla. 2014). A defendant is entitled to summary judgment under the TCPA when the undisputed facts show that the plaintiff expressly consented to receiving the call or text message in question. *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 879 (11th Cir. 2016); *see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1304-05 (11th Cir. 2015).

The Eleventh Circuit has comprehensively laid out the statutory and regulatory landscape governing prior express consent pertinent to the Court's present analysis:

> Pursuant to its rulemaking authority, the FCC defined "prior express consent" in its initial rulemaking following the TCPA's passage. *See* [*In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991* ("1992 FCC Order"),] 7 FCC Rcd. [8752,] 8769 [1992]. The FCC stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* at 8769 ¶ 31. It explained that "telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." *Id.* Referencing the House Report on the TCPA as support for this interpretation, the FCC noted that when a person provides his or her telephone number, calls to that number are permissible because "the called party has in essence requested the contact by providing the caller with their telephone number for use in normal business communications." *Id.* at 8769 ¶ 31 n. 57 (quoting H.R.Rep. No. 102–317, at 13 (1991)).

*See Murphy*, 797 F.3d at 1305-06.

> In 2012, the FCC altered the requisite form of prior express consent for "all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines," specifying that prior consent to be contacted must be "written" and setting forth disclosures that must be made when obtaining prior consent. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2012 FCC

6

>   Order"), 27 FCC Rcd. 1830, 1831 ¶ 2, 1838 ¶ 20 (2012); *see* 47 C.F.R. § 64.1200(f)(8).

*Id.* at 1306 n.4.[3] Accordingly, a caller using an ATDS must obtain "prior express consent" for all calls to wireless numbers, irrespective of the content of the call. If the call constitutes or includes telemarketing, a caller using an ATDS must obtain the called party's "prior express written consent" before contact.

Because the text message at issue here was sent in July 2016, well after the 2012 FCC Order went into effect, the Court must determine the level of consent—prior express consent or prior express written consent—necessary for Vroom's affirmative defense of consent to apply. There are two layers to the consent inquiry. First, the Court must determine whether Vroom's text message can be considered telemarketing. If so, Vroom was required to obtain Edelsberg's prior express written consent before contacting him. 47 C.F.R. § 64.1200(a)(2). If Vroom's text message did not constitute telemarketing, then Vroom only needed to obtain Edelsberg's prior express consent before contacting him. 47 C.F.R. § 64.1200(a)(1).

### B. *Vroom's Text Message to Plaintiff was Not "Telemarketing" Under the TCPA*

The TCPA regulations define "telemarketing" as "the initiation of a telephone call or message *for the purpose of* encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12) (emphasis added). Edelsberg claims that the text message he received constituted telemarketing or, alternatively, a "dual purpose" message that contained a telemarketing component, because it

---

[3] "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." *See* 47 C.F.R. § 64.1200(f)(8).

included a link to Vroom's website and Vroom's overarching business model involves both the buying and selling of used cars. Edelsberg argues that if he had clicked the link, which he admittedly did not, he would have been redirected to a webpage that contained Vroom's fillable vehicle appraisal form, as well as links to other portions of Vroom's website where it offers its own used cars for sale. Edelsberg contends that merely because the link redirected to a page on Vroom's website, where upon his own choosing he could divert himself from the vehicle appraisal process and instead peruse Vroom's used car inventory, that the purpose of the text message was telemarketing. The Court disagrees.

A plain reading of the text message at issue, "Hi Mark, I am Scott at Vroom. I saw you listed your Prius online & ***can make an offer but need you to fill out a few more details*** (takes 4 mins) http://go.vroom.com/syc/6C9179. Text STOP to Quit" (emphasis added), indicates that Vroom sought to purchase the advertised vehicle, but needed additional information regarding the vehicle before it made an offer. *See Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991* ("2005 FCC Order"), 20 FCC Rcd. 3788, 3794 n.39 (2005) (stating that a "caller responding to a classified ad would not be making a telephone solicitation, provided the purpose of the call was to inquire about or offer to purchase the product or service advertised, rather than to encourage the advertiser to purchase, rent or invest in property, goods or services"); *Murphy v. DCI Biologicals Orlando, LLC,* No. 6:12–CV–1459–ORL, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013) (granting motion to dismiss where the defendant did not encourage the text message recipient to make a purchase from it, but instead attempted to make a purchase from the recipient), *aff'd,* 797 F.3d 1302 (11th Cir. 2015); *Orea v. Nielsen Audio, Inc.*, 14-CV-04235-JCS, 2015 WL 1885936, at *3 (N.D. Cal. Apr. 24, 2015) (stating that "telephone solicitations are calls intending to encourage a purchase by the listener, not the caller. Calls asking to purchase [something from the listener] are

8

not telephone solicitations."). Indeed, Edelsberg's deposition testimony confirms that Vroom never "offer[ed] to sell [him] anything." Edelsberg Dep. Tr. [ECF No. 77-5] at 210-211:25-1.

It is clear that the purpose of the single text message from Vroom was to direct Edelsberg to a page on its website for him to enter information that would facilitate Vroom's ability to purchase his car. *Newhart v. Quicken Loans Inc.*, 9:15-CV-81250, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016) ("The FCC's regulation refers to the 'purpose' of each singular *call* and contains no reference to the purpose of the overall campaign.") (emphasis in original). While it is apparent that visiting Vroom's website "could result in the increase in the chances" of Edelsberg purchasing a used car sold by Vroom, Edelsberg "cites no authority indicating that this degree of connection between communication and purchase is sufficient to transform a text of the sort he received into a telemarketing message." *Daniel v. Five Stars Loyalty, Inc.*, No. 15-3546, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015).

### C. Vroom's Text Message Did Not Constitute a "Dual Purpose" Message

The Court is similarly unpersuaded by Edelsberg's attempt to categorize Vroom's text message as a "dual purpose" message. In 2003, the FCC issued guidance concerning "dual purpose" calls stating:

> The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "***unsolicited advertisements***," regardless of the customer service element to the call. The Commission explained in the *2002 Notice* that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

*See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* ("2003 FCC Order") 18 FCC Rcd. 14014, 14097-98 ¶ 142 (2003) (emphasis added). The 2003

9

FCC Order refers to such dual purpose calls in the context of "unsolicited advertisements" that contain a customer service and marketing element. *Id.* Here, a plain reading of Vroom's text message does not reveal any advertising purpose. Further, as will be discussed in greater detail *infra*, the text message from Vroom was not unsolicited but rather invited by Edelsberg's own online advertisement. Based on the context in which it was sent, there is simply no basis for construing Vroom's message as the type of unsolicited communication referenced by the dual purpose rule. In fact, Edelsberg's cited authority supports this conclusion.

The cases cited by Edelsberg concerning the dual purpose rule are distinguishable as they all involved unsolicited advertising communications as compared to the message Vroom sent in response to Edelsberg's classified advertisement here. For example, in *Golan v. Veritas Entertainment, LLC*, 788 F.3d 814 (8th Cir. 2015), the called party received "two **unsolicited**, prerecorded messages" that were sent for the purpose of encouraging the recipient to purchase tickets to see a newly released film. *Id.* at 816 (emphasis added); *see also Meyer v. Bebe Stores, Inc.,* 14-CV-00267-YGR, 2015 WL 431148, at *1-3 (N.D. Cal. Feb. 2, 2015) (finding that the "unsolicited text message from defendant," offering a 10% discount on future purchases, constituted a dual purpose call); *Flores v. Access Ins. Co.,* 215CV02883CASAGRX, 2017 WL 986516, at *1 (C.D. Cal. Mar. 13, 2017) (concluding that defendant's "'numerous' unsolicited telephone calls" to plaintiff informing him that his insurance policy was expiring and encouraging him to renew were dual purpose calls); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 733, 737 (N.D. Ill. 2014) (finding a dual purpose call where plaintiff alleged defendant "made unsolicited telemarketing calls" attempting to sell plaintiff a subscription service); *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (holding that defendant's purported "informational courtesy calls" to a customer, who had repeatedly asked not to be contacted, fell within the dual purpose rule where the calls urged the customer visit defendant's

store and purchase its goods).

The Court agrees with the line of cases cited by Vroom which find that communications that merely include collateral opportunities to purchase something from the caller do not constitute dual purpose messages where the opportunity to purchase something from the caller is too attenuated from the purpose of the initial communication. In *Smith v. Blue Shield of Cal. Life & Health Ins. Co.,* the court held that an informational call that also included a mention of the defendant's website was "simply too attenuated to give rise to a *clear*, unequivocal implication of advertising" despite the defendant's "overarching incentive to retain customers and receive premium payments." *See Smith*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. Jan. 13, 2017) ("The mere fact that parts of [a defendant's] website contain[] the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising."); *see also Daniel*, 2015 WL 7454260, at *4 (finding that even though the defendant's text "could result in an increase in the chances of [the plaintiff] making future purchases" from the defendant, "that purpose is simply too attenuated to make the text telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12)"); *Aderhold v. Car2go N.A., LLC*, No. 13-0489, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014) (finding that a text message instructing the plaintiff to enter an activation code on the defendant's website was not telemarketing even though the plaintiff "could, after choices of his own making, divert himself from the registration process to car2go marketing").

The Court's conclusion is further supported by the factually analogous case of *Mey v. Pep Boys–Manny, Moe & Jack*, 717 S.E.2d 235 (W. Va. 2011). There, the plaintiff's son listed a used car for sale on Craigslist. *Id.* at 238. After receiving an automated telephone call from "Caroffer.com" offering to purchase the car, the plaintiff filed an action alleging that the defendant violated the TCPA. *Id.* The plaintiff argued that the automated call had a dual purpose because "the call was not only to inquire about the car, it was also to entice the plaintiff to

11

participate in a marketing scheme designed to generate fees from automobile inspections and repairs" before an offer to purchase the car was made. *Id.* at 241. The West Virginia Supreme Court found that the mere potential that the defendant could receive some financial remuneration from plaintiff for additional services offered during its attempt to purchase the plaintiff's vehicle did not change the fact that the purpose of the initial call "was to inquire about the item advertised for sale." *Id.* at 242. Applying this principle to the instant facts reveals that the mere potential that Vroom could sell Edelsberg a car pursuant to its attempt to purchase his car does not change the fact that the purpose of Vroom's initial message was to inquire about purchasing Edelsberg's vehicle.

Simply put, Edelsberg cannot rely on Vroom's overarching business model, which includes the sale of used cars, to transform the stated purpose of Vroom's text message. *See Smith*, 228 F. Supp. 3d at 1068 ("[T]o hold otherwise . . . would transform practically all communication from any entity that is financially motivated and exchanges goods or services for money into telemarketing or advertising, which would contravene the delineated definitions of telemarketing and advertising in 47 C.F.R. § 64.1200(f)(1)(12)."). The fact that Vroom ultimately seeks to resell the used cars it has purchased cannot transform every communication it makes in response to a classified advertisement into telemarketing. *Broking v. Green Brook Buick GMG Suzuki*, CV151847BRMLHG, 2017 WL 3610490, at *5 (D.N.J. Aug. 22, 2017) (concluding that defendant's overarching goal of selling more cars to former customers did not transform every communication it made to former customers into telemarketing).

Accordingly, the Court concludes that Vroom's text message to Edelsberg was plainly not telemarketing. The Court further finds that the text message did not constitute a "dual purpose" message as contemplated by the FCC. Therefore, in order to be entitled to summary judgment, Vroom need only show that Edelsberg provided prior express consent to be contacted.

### D. *Plaintiff Expressly Consented to Receiving Vroom's Text Message*

The FCC has consistently maintained that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (stating that the TCPA is not violated by "calling a number which was provided as one at which the called party wishes to be reached."); *see also Pinkard v. Wal–Mart Stores, Inc.,* 2012 WL 5511039, at *6 (N.D. Ala. 2009) (noting that "express consent" has been found where an individual "voluntarily provides" his or her telephone number "to another."). The Eleventh Circuit has similarly ruled that express consent is established where a plaintiff provides his phone number to the defendant and the defendant contacts the plaintiff at the number provided. *Murphy*, 797 F.3d at 1308 (holding that plaintiff's "provision of his cell phone number constituted his express consent to be contacted by [defendant] at that number."); *Lawrence*, 666 F. App'x at 880 (recognizing that a plaintiff's "provision of his cell phone number to [a defendant] qualifies as prior express consent under the TCPA.").

Edelsberg argues that the act of listing a telephone number on the Internet does not constitute express consent to receive automated calls or text messages under the TCPA. This principle may be generally true: if a person lists his telephone number on the Internet in connection with an advertisement to sell a car, he has not expressly consented to receive an automated call or text message offering to, for instance, sell him a refrigerator. However, the cases cited by Edelsberg in support of this argument are distinguishable from the instant facts as none of the cases cited by Edelsberg involved a defendant responding directly to an online advertisement. *See Brown v. Account Control Tech., Inc.*, No. 13-62765, 2015 WL 11181947, at *4 (S.D. Fla. Jan. 16, 2015) (finding no express consent where there was no evidence that

13

plaintiff's posting of his number in an online advertisement had any connection to the purpose of the debt collection call); *Hucker v. Receivables Performance Mgmt., LLC*, 11-CV-00845A F, 2014 WL 1492477, at *1 (W.D.N.Y. Apr. 9, 2014) (finding no express consent where plaintiff's number was listed in an online advertisement for his cleaning business and plaintiff was contacted regarding an unrelated consumer debt); *City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, 96 F. Supp. 3d 403, 417 (D.N.J. 2015) ("publishing a fax number on a website does not, *by itself*, constitute consent to receive unsolicited fax advertisements") (emphasis added). Edelsberg's argument that express consent does not exist in this case because he did not provide his cell phone number *directly* to Vroom was rejected by the Eleventh Circuit in *Mais v. Gulf Coast Collection Bureau, Inc.*, and further misses the point that he provided his number directly to the public at large for purposes of contacting him in connection with his advertisement. *Mais*, 768 F.3d 1110, 1123 (11th Cir. 2014) ("the appropriate [express consent] analysis turns on whether the called party granted permission or authorization, not on whether the creditor received the number directly.").

The Court finds that by including his phone number in an online advertisement that he knew could be accessed by anyone with an Internet connection and directing interested buyers to contact him at the provided number for "more info," Edelsberg expressly consented to being contacted by Vroom at that number to facilitate the purchase of his advertised vehicle. Despite Edelsberg's *post hoc* representations that he did not want to be contacted by dealerships or with automated messages, there are no such limitations included in Edelsberg's actual Craigslist advertisement.[4] *Johnson v. Credit Prot. Ass'n, L.P.,* No. 11–80604–CIV, 2012 WL 5875605, at *4

---

4  In his deposition, Edelsberg was specifically asked whether he considered including a "no robots or no automated responses" limitation in his advertisement to which he unequivocally responded: "No." *See* Edelsberg Dep. Tr. [ECF No. 77-5] 211:14-18. Edelsberg also confirmed it was "okay for a dealer to respond to [his] advertisement." *Id.* at 201:1-9.

(S.D. Fla. Nov. 20, 2012) ("Without an affirmative statement by Plaintiff that he advised [Defendant] it could only use his phone number for [certain] purposes, he is not entitled to claim he gave instructions to the contrary."); *Mey,* 717 S.E. 2d at 243 (holding that there was no TCPA violation where the "plaintiff's son placed the plaintiffs telephone number on the internet and invited third parties to contact him" and "[a]fter receiving this invitation from the plaintiff, the defendants placed an automated telephone call to the number provided and expressed an interest in purchasing the car."). Edelsberg's reliance on *Mohamed v. Off Lease Only, Inc.*, for the proposition that express consent cannot be obtained from a Craigslist advertisement is misplaced as the critical difference is that the *Mohamed* plaintiff's advertisement expressly stated "not to text [him] at all." *Mohamed,* 15-23352-CIV, 2017 WL 1080342, at *4 (S.D. Fla. Mar. 22, 2017) (distinguishing *Mey* on the grounds that the Craigslist posting in *Mey* did not include the limiting language that was present in the instant plaintiff's advertisement).

Here, by including his cell phone number in his advertisement with instructions to contact him for more information, Edelsberg provided express consent for Vroom to contact him for that purpose.

## IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment is [ECF No. 76] is **GRANTED**.

This action is **CLOSED** and all other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27th day of March, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE